## Case No. 13,103.

### SMITH v. SCHROEDER.

[Brunner, Col. Cas. 672;[1] 21 Law Rep. 739.]

Circuit Court, D. Massachusetts. 1858.

#### ESTOPPEL—MATTER IN PAIS—SALE.

Where a defendant conveyed to plaintiff certain mills, together with all machinery, apparatus, etc., "now on said premises or removed for the purpose of being repaired"; if the defendant led the plaintiff to believe that certain machinery was on the premises, and having induced him to contract for the same, secretly removed it to prevent its passing by the deed, he would be estopped from claiming that it did not so pass, in an action of trover by the plaintiff.

This was an action of trover for a quantity of print rolls, tried before PITMAN, District Judge, at the last November term. The plaintiff [Joseph Smith] claimed title under a deed from the defendant [Theodore Schroeder], which conveyed to him certain lands and mills, particularly described in the deed, "together with all the machinery and parts of machinery, apparatus, tools, implements, and utensils of every description, now on said premises or removed for the purpose of being repaired." The plaintiff offered evidence tending to show that the defendant represented to the plaintiff, as part of the inducement to the purchase, that the rolls were a part of the machinery of the print works formerly standing on the premises described by the deed which had been consumed by fire, and that in point of fact they were actually a part thereof, and necessary to the operation of print works: but it appeared that a short time before the deed was executed the defendant, without the knowledge of the plaintiff, removed them from the premises conveyed by that deed to a barn standing on land simultaneously conveyed by the defendant to the plaintiff by another deed, though embraced in the same contract by which the premises first mentioned were purchased.

The judge instructed the jury as follows:

"In this case the plaintiff seeks to recover of the defendant, the value of certain copper rolls, which he says were purchased by him of the defendant, in June, 1855, and the evidence of which is contained in a deed of the lot and water privilege on which the Manchester Print Works stood, together with all the machinery, etc. (using words broad enough to cover these rolls), but after language very comprehensive, and which was well calculated to make the plaintiff suppose that they conveyed everything in the shape of tools and machinery which had belonged to the print works, and which had been saved from the fire which had consumed the building, there followed this description—'now remaining on the premises, or removed elsewhere for the purpose of repair-

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

ing.' It is contended by the defendant that at the date of this deed these copper rolls were not on the premises; but had been removed from the same, but not for repairing, being in the barn of the defendant, in the neighborhood of the premises, for no such purpose.

"From the evidence which has been admitted in this case, though objected to by the defendant, it appears that certain copper rolls, after the fire, were put in a house standing on these premises, where they remained for some time. The fire was in December, 1854; the rolls remained there until the last of February or the 1st of March, 1855. That at the time of this fire, the plaintiff having had previous dealings with the defendant, and having furnished him with lumber and coal, there was a balance due from the defendant to the plaintiff of seven thousand dollars. That the defendant being unable to rebuild the print works without assistance, there had been negotiations between the plaintiff and the defendant to induce the plaintiff to advance a sum sufficient for the purpose, or to rebuild them himself, upon such consideration as was agreed upon between him and the plaintiff. One of the plaintiff's witnesses, Oliver Allen, swears that he was in the employment of Mr. Smith, the plaintiff, in February, 1855, and June, 1856; that in the spring of 1855, at the time when Smith meant to rebuild the Manchester Print Works, he wanted an inventory of the property remaining at the works, that he might know how he should be secured; that he applied to Mr. McCabe, since dead, the clerk of the defendant, for this information; that Mr. Schroeder was not with plaintiff at this time; that afterwards Mr. McCabe brought a schedule to the plaintiff which was headed 'Inventory of the Property at the Manchester Print Works after the Fire, and Now Remaining.' That in this inventory was 17,150 lbs. of copper rolls, valued at $4,802; and handkerchief rolls, valued at $111.32; in all, $4,913.32. That Mr. McCabe requested the witness to copy the same, leaving out the valuation, which the witness did, and handed the copy to Mr. McCabe; the original the witness put into the plaintiff's desk; it was not in the handwriting of Mr. McCabe, or of the defendant, and the witness did not know in whose handwriting it was. There is other evidence in the cause to show that Mr. McCabe was the principal clerk and bookkeeper of the defendant at this time, and that he had been in the habit of transacting out of door business for the defendant, and gave written orders to teamsters for goods for the works, signed with his own name for the defendant.

"From these facts, it is for you to infer whether Mr. McCabe in giving this information to the plaintiff acted as the agent of the defendant; and whether it is likely that Mr. McCabe would have furnished this in-

ventory without communicating with the defendant. If you believe that the defendant had no knowledge of this communication to the plaintiff, then he is not accountable for the same. But you must exercise your common sense in this matter, and if you think it very improbable that in a transaction of this nature, McCabe acted without the knowledge of the defendants, at the time or immediately afterwards, and that without such knowledge on the part of the defendant it is not probable he would have given this paper to the plaintiff, which was not in his own handwriting, then you are warranted in drawing the inference that McCabe in so doing acted as the agent, and with the knowledge of the defendant, and then the defendant is bound in the same manner as if he had made the communication to the plaintiff himself. The plaintiff had every right to suppose, from the character of McCabe, and the nature of the transaction, that it came from the defendant to him, and from the evidence of other persons, who testified that in the spring of 1855, this inventory or a similar one was shown them by the plaintiff, who wished them to see if the valuation of the articles contained therein was correct; it would appear that the plaintiff considered it a paper of more consequence than it would have been if it had been the mere representation of McCabe. But as the representation of McCabe as the clerk of the defendant, the plaintiff was authorized to believe that it was a true representation, and therefore if it was not true it was well calculated to deceive him.

"By the testimony of persons employed by the defendant it appears that a large number of copper rolls in February or March, 1855, were taken by them and carried from the house on the premises conveyed by the deed of the defendant to the plaintiff to the barn of the defendant, not far from the print works. And there is the testimony of two witnesses, who swear that the defendant told them that he had removed these rolls that they might not be included in the deed from him to the plaintiff. Was it necessary that he should do this to prevent them from being included in this deed? It took a part of two days in very bad wheeling (as the witnesses say) to remove these rolls from the premises, when a very few words would have accomplished the purpose if the defendant had raised no expectation in the plaintiff that they were to be conveyed to him. The deed might have said all the machinery, tools, and other apparatus, etc., except the copper rolls. But if the defendant knew that the plaintiff expected that everything contained in this inventory was to have been conveyed to him, and considering the object which the defendant had in view to induce the plaintiff to rebuild these works, and the danger of preventing him from doing so if he was informed that these rolls would not be conveyed to him, it would be necessary that the rolls should not be excluded from the deed by words which the plaintiff could read and readily understand, but by acts of which the plaintiff should be kept in ignorance, and by words not calculated to excite, but rather to lull suspicion; and with a limitation connected with what the defendant knew he had done, he hoped to exclude them from the deed, whilst the plaintiff supposed they were included within it. Thus very large expressions are used in reference to machinery, tools, etc., though limited by the description, 'on the premises or removed for repairing.' If Mr. Smith had been induced to search, and did not find them on the premises, of which there is no evidence that he did, he might still believe them as included within the description of 'removed elsewhere for repairing.' Now if the defendant removed these rolls for the purpose of thus deceiving the plaintiff, he shall not be suffered to take advantage of his own wrong; but as it is a rule of law, that in case of any ambiguity, a deed is to be taken most strongly against the grantor, more especially where the difficulty arises from the act of the grantor, by which he induces the grantee to believe that the property in dispute was conveyed by the deed, and was in the situation described by the deed, then it shall be so construed, and the contract shall be executed in the sense in which it was understood by the grantee, and in which the grantor believed the grantee understood it. It is true that the grantee may avoid such fraudulent contract, and sue for damages. But if the grantor is not able to respond in damages, or the grantee having carried the contract into effect on his part, has no other remedy but to claim the property which he thus purchased, he may sue upon the contract which is thus proved, and the fraud of the defendant shall not and ought not to avail him in his defense. The testimony is, that after the works were built, and leased by the plaintiff to the defendant, one hundred and ten copper rolls were brought by the defendant to the works, which from their appearance had been in use before; and after the defendant failed, he took them away on the 17th of September last, as the witness understood. Mr. Patterson, the witness, was an engraver there; he went to dinner, and when he returned he found no rolls there; he says he made inquiry, and was informed they were in the defendant's cellar. If you believe these were the rolls in the controversy, and that they belonged to the plaintiff, then this was a wrongful taking, and needed no demand to prove a conversion, and you can give interest if you find for the plaintiff, upon the value of these rolls from the 17th of September last."

The verdict being for the plaintiff, the defendant moved for a new trial for causes mentioned in the opinion of the court.

Mr. Jenckes, for plaintiff.
Cozzens & Bradley, contra.

CURTIS, Circuit Justice. The first and most comprehensive objection made to the rulings of the judge at the trial is, that the title of the plaintiff depends upon the deed which was put in evidence; that this limits him to such machinery as was actually on the premises at the date of the deed, or had then been removed therefrom for repairs; and that instead of leaving to the jury the question whether the rolls were then on the premises, or had then been removed for repairs, the judge left it to them, in substance, to inquire whether the defendant led the plaintiff to believe the rolls were on the premises, and having induced him to contract for them with the other property, secretly removed them in order to prevent them from passing by the deed; and that if this was so they were to be deemed to be included in the deed. I am of opinion this instruction was correct. The law is settled certainly in this court by the cases of Philadelphia, W. & B. R. Co. v. Howard, 13 How. [54 U. S.] 307, and Hawes v. Marchant [Case No. 6,240], as it previously was in England by the cases of Pickard v. Sears, 6 Adol. & E. 469; Coles v. Bank of England, 10 Adol. & E. 437; Freeman v. Cooke, 2 Exch. 654; and it has been held in several state courts of the highest respectability that if a party wilfully misrepresents a state of things, and induces another to act on a belief in the truth of his representation, and that person does so act upon it to his prejudice, the party who makes the misrepresentation is precluded from showing it to be a misrepresentation, as against him it is in judgment of law true. This case falls under that rule; for though when the defendant originally represented the rolls to be on the premises they were there, this representation not having been withdrawn must be taken as a continuing representation, and operative at the very time of the contract, when the defendant knew it to be false, and must have designed to mislead the plaintiff, because he himself had previously removed the rolls.

This disposes not only of the objections to the instructions of the court to the jury on this part of the case, but also the exceptions taken to the admission of evidence respecting it; and among others, of the exception on account of the admission of other deeds made by the defendant to the plaintiff, simultaneously with the deed in question. These, in connection with the other evidence, had a legitimate tendency to satisfy the jury of the fraudulent purpose of the defendant; the argument being, that he resorted to three deeds of conveyance, instead of one, so that he could avail himself of the limitation in the description of the machinery conveyed, requiring it to be on the premises described in that deed. The other deeds were therefore proper to be known to the jury, who might consider them part of the defendant's scheme of fraud.

The other ground relied on was, that the evidence of the authority of McCabe to exhibit the schedule to the plaintiff was not competent. It appeared in evidence that McCabe was not only the principal clerk and bookkeeper of the defendant, and also conducted some of his out-door business, but that he actually conducted, on the part of the defendant, the negotiations which resulted in the sale in question. And so far as appeared, he alone conducted them, without the intervention of the defendant. It was therefore proper to leave it to the jury to find whether, when McCabe, in the course of the negotiations, furnished a schedule of the property, he did so with the knowledge and consent of the defendant. It was not incompetent for the jury to infer from the circumstances that the principal was actually cognizant of the act of his clerk in taking so important a step in the negotiations as to furnish a schedule of the property to be sold, the clerk himself being dead at the time of the trial, the defendant and his principal clerk being, from their relation, in daily communication with each other while the negotiations were going on, and the defendant having acted on the result of the clerk's negotiations, of which this schedule formed an essential part.

The motion for a new trial is overruled, and judgment must be rendered on the verdict.